The Honorable James L. Robart

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON

CAYA LENAY, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ROSS HUNTER, an individual, JASON ALDANA, an individual,

Defendants.

No. 3:25-cv-05743-JLR-TL

DEFENDANTS' RULE 12(c) MOTION TO DISMISS

NOTE ON MOTION CALENDAR:
May 14, 2026

## I.    RELIEF REQUESTED

Pursuant to Fed. R. Civ. P. 12(c), Defendants Ross Hunter and Jason Aldana respectfully request this Court dismiss Plaintiff's Complaint because they are entitled to qualified immunity. In the alternative, Defendants request this Court abstain from consideration of Plaintiff's constitutional claims, pursuant to *Pullman, Burford,* and *Younger*, as allowing Plaintiff's constitutional claims to go forward as well pled Fourteenth and Eight Amendment violations would, in effect, operate as a ruling on the scope of state law, namely the Secretary of the Washington State Department of Children, Youth, and Families' (DCYF) authority to manage the operation of its Juvenile Rehabilitation facilities under RCW 72.01.410. Further, Defendants request this Court decline to exercise supplemental jurisdiction to hear Plaintiff's state law Trespass to Chattels claim as an identical claim is currently pending in Thurston County Superior Court. For these reasons,

DEFENDANTS' RULE 12(C) MOTION TO DISMISS - 1
3:25-cv-05743-JLR-TL
1039-00081/794534

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

Defendants respectfully request dismissal of Plaintiff's Complaint with prejudice.

## II.   STATEMENT OF FACTS

### A.   Overview of Complaint and Claims at Issue

Plaintiff filed his Complaint on August 22, 2025 on behalf of himself and 43 other similarly situated residents of Green Hill School (GHS) who were transferred to Department of Corrections' (DOC) custody on July 12, 2024. *See generally,* Complaint at ¶ 1. Green Hill School is a Washington State DCYF facility managed by the State's Juvenile Rehabilitation program. *Id.* at ¶ 10. Plaintiff alleges the transfer was "illegal" because it violated the State's "JR-to-25" legislation, a recently passed law that recognized young adults[1] under age 25 should be treated differently in the State's correctional system (as compared to older "adults" incarcerated in DOC). *Id.* at ¶ ¶ 12-14.

In his Complaint, Plaintiff brings five claims, four federal claims brought under 42 U.S.C. §1983 for alleged violations of constitutional rights and one associated property claim. *See generally, id.* Plaintiff's first and third claims allege Defendants violated Plaintiff's statutory rights under the Fourteenth Amendment in that they alledgedly: 1) violated a statutory right to remain at Green Hill School (RCW 72.01.410) and 2) violated a due process right (right to a hearing under RCW 13.40.280) prior to being transferred to DOC custody under age 25. *Id.* at ¶ 30, 33. Plaintiff's second and fourth claims allege violations of Plaintiff's rights under the Eight Amendment for deprivation of "rehabilitative services" and other generalized allegations regarding conditions of confinement while at DOC such as "excessive room confinement, excessive use of force, and arbitrary and punitive disciplinary practices." *Id.* at ¶ 31, 33. Plaintiff's remaining fifth claim is a state law property claim for Trespass to Chattels alleging loss of personal property during the transfer.

### B.   Relevant Legislative and Policy History

Fundamentally the statutory dispute at issue in this, and the other related litigation

---

[1] Throughout this motion, the term "young adults" will be used to signify persons between ages 18 and 25.

DEFENDANTS' RULE 12(C) MOTION TO DISMISS - 2
3:25-cv-05743-JLR-TL
1039-00081/794534

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

described further below, is whether the DCYF Secretary had independent statutory authority to transfer young adults from DCYF to DOC custody for population management concerns. In 2018, Washington State passed the "JR-to-25 law" as an express recognition of the fact that a growing body of neuroscience recognized brain development was not complete until the age of 25. *See, e.g., Complaint* at ¶ 12-14. The "JR-to-25 law" has since been codified as RCW 72.01.410 – Placement of a person convicted as an adult for a felony offense committed under the age of eighteen.

With three separate subsections, Washington State's JR-to-25 law envisions roles for both the DCYF and DOC in managing periods of incarceration for the state's young adult population. RCW 72.01.410 provides:

> (1) Whenever any person is convicted as an adult in the courts of this state of a felony offense committed under the age of eighteen, and is committed for a term of confinement, that person shall be initially placed in a facility operated by the [DCYF]. The department of corrections shall determine the person's earned release date.
>
> . . . (a) The person shall not be transferred to the custody of the department of corrections without the approval of the [DCYF] until the person reaches the age of twenty-five.

RCW 72.01.410 (1)(a). RCW 72.01.410(b) requires the DOC to approve any release plans and transfers of young adults to community custody. In the event the DCYF "determines that retaining custody of the person in a [DCYF facility] presents a significant safety risk," RCW 72.01.410(c) allows the DCYF to transfer the young adult to DOC custody. When a young adult's release date is "on or after the person's twenty-fifth birthday," DOC retains authority over custody decisions and must "approve any leave from the facility." RCW 72.01.410(d). Transfer to DOC custody is mandatory after age twenty-five. *Id.* Upon reaching age twenty-one, RCW 72.01.410 provides for review of placement and consideration of DOC transfer:

> (3) The [DCYF] must review the placement of a person over age twenty-one in the custody of [DCYF] under this section to determine whether the

DEFENDANTS' RULE 12(C) MOTION TO DISMISS - 3
3:25-cv-05743-JLR-TL
1039-00081/794534

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

person should be transferred to the custody of [DOC]. The [DCYF] may determine the frequency of the review required under this subsection, but the review must occur at least once before the person reaches age twenty-three if the person's commitment period in a juvenile institution extends beyond the person's twenty-third birthday.

RCW 72.01.410(3).

There is no independent requirement for a hearing pursuant to RCW 13.40.280(2) listed in Washington State's "JR-to-25" law. *See generally,* RCW 72.01.410. Instead, RCW 72.01.410(1)(a) provides that the individuals placed in DCYF custody under RCW 72.01.410 are entitled to "the same treatment, housing options, transfer, and access to program resources as any other person committed to that juvenile correctional facility or institution pursuant to chapter 13.40." Chapter RCW 13.40 provides a variety of both rights and responsibilities to juvenile offenders. *See* RCW 13.40.010 (providing, for example, that juvenile offenders have the right to treatment but also are accountable for their behavior). Specifically, RCW 13.40.280(2) provides juvenile offenders are afforded certain rights during consideration of a facility transfer:

> (2) The secretary [DCYF] may, with the consent of the secretary of the [DOC], transfer a juvenile offender to the [DOC] if it is established at a hearing before a review board that continued placement of the juvenile offender in an institution for juvenile offenders presents a continuing and serious threat to the safety of others in the institution. The [DCYF] shall establish rules for the conduct of the hearing, including provision of counsel for the juvenile offender.

RCW 13.40.280(2). As used in Chapter 13.40, "juvenile" refers to an individual under 18 years old who has not been transferred to the adult court system or is under adult court jurisdiction. *See* RCW 13.40.020; RCW 13.04.011.

C.   **Prior and Current Related Litigation**

In June 2024, Green Hill School faced an "unprecedented overcrowding crisis" where its population had surged to nearly 33% percent over its maximum capacity. Decl. of Danielle Rogowski ("Decl.") Ex. G, pg. 8. To address the dire safety and security concerns

DEFENDANTS' RULE 12(C) MOTION TO DISMISS - 4
3:25-cv-05743-JLR-TL
1039-00081/794534

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

of a facility where "aggression and fighting among residents and violence towards staff" was at an all-time high, Defendant Ross Hunter, Secretary DCYF, ordered the transfer of 43 residents, the purported class members in this litigation, to DOC custody. *Id.* On July 15, 2024, Columbia Legal Services filed a Motion for Preliminary Injunction in *Ta'Aafulisia, et.al., v. DCYF*, Thurston Cty. Sup. Ct. Case No. 22-2-02974-34, where it argued the transfer violated the terms of a previously entered settlement agreement, DCYF policies, and state law, because there were no hearings conducted pursuant to RCW 13.40.280 to determine if transferees presented a "continuing and serious threat." Decl. Ex. D. On July 23, 2024, Thurston County Superior Court Judge Anne Egeler ordered DCYF to return all 43 transferees back to DCYF custody within 14 days from July 19, 2024. Decl. Ex. D. On July 30, 2024, the State filed an Emergency Motion to Stay in the Washington State Court of Appeals, which was denied. *See* Decl. Ex. H.

On July 31, 2024, several Washington counties joined the Washington State Association of Counties, to file a Complaint for Relief and Declaratory Judgment in response to a July 5, 2024 letter issued by DCYF Secretary Ross Hunter that immediately suspended the intake of youth and young adults into DCYF Juvenile Rehabilitation facilities due to overcrowding and overpopulation concerns. Decl. Ex. L. In *State of Washington v. K'Andre Battle*, King County Superior Court Case No. 22-8-00-567-1, the King County Department of Public Defense sought sanctions for the Juvenile Rehabilitation system's failure to house offenders in state DCYF facilities, and, as a result, forced their continued incarceration in county jails.

In response to the onslaught of litigation DCYF was facing regarding issues of overcrowding and overpopulation, the Washington Association of Sheriffs and Police Chiefs argued:

> One common sense emergency option that should be considered is the transfer of non-juvenile inmates (18-25-year-olds) at Green Hill School to the custody of the Department of Corrections for incarceration in adult facilities.

DEFENDANTS' RULE 12(C) MOTION TO DISMISS - 5
3:25-cv-05743-JLR-TL
1039-00081/794534

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

Decl. Ex. J. The State's Association of Superior Court Judges issued, what can best be described as, a sharp rebuke of DCYF's failure to plan for population growth:

> Full funding for the care and rehabilitation of these youth is a State responsibility, not a local obligation. The Department's pronouncement is completely at odds with its legal obligations, and this decision places an undue burden on counties with limited resources for these young people. Further, once a juvenile is ordered to serve a disposition in JR, it becomes the Department's responsibility to provide release planning and supervision of the juvenile once released. Superior Courts and the counties do not have the jurisdiction to do this for the Department. *See* RCW 13.40.210 and RCW 13.40.212.

Rogowski Decl. Ex. K.

In August 2024, the *Ta'Afulisia* litigation continued with the State filing a Motion for Discretionary Review in the Washington State Court of Appeals arguing the DCYF secretary had independent authority to order the transfer under RCW 72.01.410(1). Decl. Ex. G. DCYF's Motion for Discretionary Review was denied on October 18, 2024, Decl. Ex. H, and the parties entered a modified settlement agreement in the *Ta'Afulisia* litigation on September 26, 2025. Decl. Ex. I.

On August 21, 2025, Plaintiff filed *Lenay, et. al. v. Green Hill School*, Case No. 25-2-03277-34, in Thurston County Superior Court alleging negligence claims related to the July 12, 2024 transfer and loss of property. Decl. Ex. A. As of the time of the filing of this motion the *Lenay* litigation is still pending in state court with trial currently set for April 17, 2028. *Id.* Decl. Ex. B.

### III.   ISSUES PRESENTED

1.     Whether Defendants, Ross Hunter and Jason Aldana are entitled to qualified immunity because any potential statutory right to incarceration in a Washington State Juvenile Rehabilitation facility was not a "clearly established" statutory right prior to the July 12, 2024 transfer? [YES]

2.     In the alternative, whether the federal court should abstain from

DEFENDANTS' RULE 12(C) MOTION TO DISMISS - 6
3:25-cv-05743-JLR-TL
1039-00081/794534

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

consideration of the scope of the DCYF Secretary's authority to manage the State's Juvenile Rehabilitation population under RCW 72.01.410 because the state law is unclear and involves an "important state interest." [YES]

3.     Whether this Court should decline to exercise supplemental jurisdiction to consider the Plaintiff's state law property claim that is also currently pending in Thurston County Superior Court? [YES]

## IV.   EVIDENCE RELIED UPON

1. Plaintiff's Class Action Complaint for Civil Rights Violations

2. Declaration of Danielle Rogowski and attached exhibits[2]

## V.   ARGUMENT AND AUTHORITY

### A.   Standard for CR 12(c) Motions to Dismiss

Federal Rule of Civil Produce 12(c) allows for a Motion for Judgment on the Pleadings to be brought, "[a]fter the pleadings are closed -- but early enough not to delay trial." FRCP 12(c). "Because 'Rules 12(b)(6) and 12(c) are substantially identical,' a motion for judgment on the pleadings is analyzed under the standard applicable to a motion to dismiss for failure to state a claim." *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, No. C10-861RSM, 2012 WL 2565067 at *2 (W.D. Wash. June 29, 2012) (quoting *Strigliabotti v. Franklin Resources, Inc.,* 398 F. Supp. 2d 1094 (N.D. Cal. 2005). Judgment on the pleadings is appropriate if, assuming the truth of material facts plead in the complaint, the moving party is nonetheless entitled to judgment as a matter of law. *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1550 (9th Cir. 1989).

In addition to consideration of the facts alleged in the complaint, the Court may also take into account materials to which it can take judicial notice. *Heliotrope Gen., Inc. v.*

---

[2] A court may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Given the large number of state court pleadings associated with this litigation, copies of the relevant filings have been provided as exhibits for convenience.

DEFENDANTS' RULE 12(C) MOTION TO DISMISS - 7
3:25-cv-05743-JLR-TL

1039-00081/794534

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

*Ford Motor Co.*, 189 F.3d 971, 981 (9th Cir. 1999). Dismissal under Rule 12(c) is proper when assessment of the complaint, in combination with materials for which judicial notice is proper, demonstrates "beyond doubt that the [non-moving] party cannot prove any facts that would support his claim for relief." *Morgan v. County of Yolo*, 436 F. Supp. 2d 1152, 1155 (2006) (quoting *R.J. Corman Derailment Services, LLC v. Int'l Union of Operating Engineers, Local 150, AFL-CIO,* 335 F.3d 643, 647 (7th Cir. 2003).

**B.    Defendants are entitled to qualified immunity for § 1983 claims because Plaintiff's transfer to DOC custody did not violate a "clearly established" statutory or constitutional right.**

Qualified immunity under federal law shields state officials from civil lawsuits unless the plaintiff can show (1) the official violated a statutory or constitutional right, and, if so, (2) the right at issue was "clearly established" at the time of the challenged conduct such that it would have been clear to every reasonable officer that his conduct was unlawful in that situation. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001), *abrogated, in part, by Pearson v. Callahan*, 129 S. Ct. 808 (2009); *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 2083 (2011).

*i. Defendants are high level state officials performing a discretionary function.*

"High officials require greater protection than those with less complex discretionary responsibilities." *Harlow v. Fitzgerald,* 457 U.S. 800, 807, 102 S.Ct. 2727 (1982). As the Secretary of the Washington State DCYF, Ross Hunter was tasked to balance the implementation and oversight of the new groundbreaking JR-25 legislation with a substantial increase and concern of overcrowding issues in the State's Juvenile Rehabilitation facilities. *See, e.g.,* Decl. Ex. G. As the Superintendent of Green Hill School, Jason Aldana was a high-level executive in DCYF who was also charged with management of this issue as related to Green Hill School. *Id.* In exercising their discretion, high level officials are not required to "anticipate subsequent legal developments." *Harlow*, 457 U.S. at 818. As a result, the threshold question for whether a qualified immunity defense applies

DEFENDANTS' RULE 12(C) MOTION TO DISMISS - 8
3:25-cv-05743-JLR-TL
1039-00081/794534

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

is whether the official can "fairly be said" to know their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.*

*ii. Plaintiff fails to allege a violation of a "clearly established" constitutional right.*

Plaintiff has not properly pled a constitutional violation under the Eighth or Fourteenth Amendments. Plaintiff's first four causes of action allege violations of the Eighth and Fourteenth Amendments as a result of his transfer from Green Hill School to DOC custody. Complaint ¶ ¶ 30-33. Young adults in Washington State do not have a "clearly established" federal constitutional right to be incarcerated at Green Hill School. Further, any potential Eighth Amendment claims regarding conditions of confinement and/or the lack of rehabilitative programming, are properly brought against the officials running the DOC facility to which the class members were transferred.

The Fourteenth Amendment does not provide a constitutional right to incarceration in a particular institution and the decision to assign a particular individual to a particular correctional facility is not subject to "audit" under the Due Process Clause. *Meachum v. Fano*, 427 U.S. 215, 224, 96 S. Ct. 2532 (1976). "[T]he criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution. *Id.*

Of note, in *Meachum*, the Supreme Court expressly distinguishes it's holding from that in *Wolfe v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963 (1974). In *Wolfe,* the Court considered the loss of "good time" credits without proper procedural protections. *Id.* The key distinction between *Wolfe* and *Meachum*, is that *Wolfe* found a liberty interest was implicated in the potential arbitrary loss of statutorily created "good time" credits that would result in early release from incarceration – and therefore, procedural protections were required. *Id.* In contrast, *Meachum* does not concern a liberty interest, because State law conferred no statutory right to remain at the facility of initial assignment and expressly

DEFENDANTS' RULE 12(C) MOTION TO DISMISS - 9
3:25-cv-05743-JLR-TL
1039-00081/794534

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

recognized that "transfer in a wide variety of circumstances is vested in prison officials." *Meachum*, 427 U.S. at 227.

To properly plead a violation of the Eight Amendment, Plaintiff must allege an "extreme deprivation" that denies "the minimal civilized measure of life's necessities." *Hudson v. McMillian*, 112 S. Ct. 995, 1000, 112 S. Ct. 995 (1992); *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson*, 112 S. Ct. at 9 (quoting *Rhodes*, 452 U.S. at 347). Plaintiff cites no authority for their allegation that lack of access to rehabilitative programming constitutes a violation of the Eighth Amendment. *See* Complaint at ¶ 31. Indeed, they cannot as "limited work hours and delay before receiving education" does not "inflict pain, much less unnecessary and wanton pain" necessary for a violation of the Eighth Amendment. *Rhodes*, 452 U.S. at 348. Assuming, but not admitting, Plaintiff's second Eighth Amendment allegation is true, being subjected to "excessive room confinement, excessive use of force, and arbitrary and punitive disciplinary practices" while in DOC custody, Complaint at ¶ 33; these claims are properly brought against DOC officials and staff members of the DOC facility who committed these violations. As the DCYF Secretary and Superintendent of Green Hill School, the Defendants in this instant action have no authority over the operation of Washington State's DOC facilities.

In sum, the fact remains that Plaintiff, and all other potential class members, would ultimately be transferred to DOC custody to serve the remainder of their sentence upon reaching age 25. There was no Fourteenth Amendment liberty interest at stake because the transfer at issue did not result in any lengthening or shortening of a period of incarceration. *Meachum* makes clear, no federal constitutional violation was committed by the individually named defendants in ordering the transfer pursuant to their discretion to manage overpopulation concerns in the Juvenile Rehabilitation system. Additionally, any delay or lack of programming availability that allegedly occurred as a result of the transfer did not inflict "unnecessary and wanton" pain sufficient to constitute a violation of the

DEFENDANTS' RULE 12(C) MOTION TO DISMISS - 10
3:25-cv-05743-JLR-TL
1039-00081/794534

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

Eighth Amendment. Taking all allegations in Plaintiff's Complaint as true, Defendants did not violate a clearly established constitutional right such that they would lose their entitlement to qualified immunity.

*iii. Plaintiff fails to allege a violation of a "clearly established" statutory right.*

Defendants are entitled to qualified immunity because Plaintiff, and all potential class members, had no "clearly established" statutory right to confinement at Green Hill School. Plaintiff's rights under RCW 72.01.410 and RCW 13.40.280 have been, and continue to be, the subject of extensive litigation in state court. *See generally,* Decl. Ex. A – L. Even if the state court system does conclude that Plaintiff had a statutory right to remain at Green Hill School absent a hearing, this right was not "clearly established," at the time the transfer at issue occurred, such that Defendants lose their entitlement to qualified immunity.

"If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" the law forbade conduct not previously identified as unlawful." *Harlow,* 457 U.S. at 818. As the Attorney General's office explained to the Court of Appeals in *Ta'Afulisia*, Chapters 13.40 and 72.01 of the RCW provide several statutes under which, the State argued, DCYF may transfer an adult-convicted youth to DOC custody. Decl. Ex. G, pg. 9. RCW 72.01.410(1)(c) provides, "If [DCYF] determines that retaining custody of the person of the person in a facility of the [DCYF] presents a significant safety risk, [DCYF] may transfer the person to the custody of the department of corrections. Additionally, RCW 72.01.410 mandates:

> [DCYF] must review the placement of a person over age twenty-one in the custody of [DCYF] under this section to determine whether the person should be transferred to the custody of the department of corrections. [DCYF] may determine the frequency of the review required under the subsection, but the review must occur at least once before the person reaches the age of twenty-three if the person's commitment period in a juvenile institution extends beyond the person's twenty-third birthday.

DEFENDANTS' RULE 12(C) MOTION TO DISMISS - 11
3:25-cv-05743-JLR-TL
1039-00081/794534

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

RCW 72.01.410(3). RCW 72.01.410 contains no reference to any hearing requirement and simply mandates that, while in the custody of DCYF, a person must have equal access to "treatment, housing options, transfer, and access to program resources . . . pursuant to chapter 12.40 RCW." RCW 72.01.410(1)(a). Judge Egeler's *Ta'Afulisia* order explains the connection between RCW 72.01.410 and the hearing requirement found in RCW 13.40.280 appears to arise from a settlement agreement:

> Conclusions of Law: (3) RCW 72.01.410 and the settlement agreement incorporate the procedures regarding transfer to a DOC facility enumerated in RCW 13.40.280, which require that adult-sentenced youth placed in a DCYF facility be granted the procedures in RCW 13.40.280(2).

*Ta'Afulisia, et. al, v. DCYF*, No. 22-2-02974-34, Order Granting Petitioners' Motion for Preliminary Injunction, July 23, 2024 (clarifying terms of a prior settlement agreement in response to a Motion for Preliminary Injunction).

While there are ample arguments to be made regarding the statutory interpretation of DCYF's authority to manage residents in the Juvenile Rehabilitation system, the fact remains that is not the issue before this Court. Plaintiff's allegations are based on the notion that RCW 72.01.410 and RCW 13.40.280 created a "recognized statutory right to remain at GHS until the age of 25" and "a statutory right to due process for a transfer to DOC custody prior to reaching the age of 25." Complaint at ¶ 30. Yet the state court record is clear, even if this statutory right exists, it has yet to be "clearly established" and was certainly not "clearly established" on July 12, 2024, the date of the transfer. The scope of authority the DCYF Secretary is afforded under RCW 72.01.410 was, and continues to be, the subject of litigation. Even the Washington Association of Sheriffs and Police Chiefs argued transfer to DOC custody was a "common sense solution" to the State's overcrowding issue in its Juvenile Rehabilitation facilities. Decl. Ex. J. Perhaps most telling however, is the fact that a plain reading of the statute, RCW 72.01.410, cannot be said to put a government official on notice they were violating the law. Additionally, several members of the State's

DEFENDANTS' RULE 12(C) MOTION TO DISMISS - 12
3:25-cv-05743-JLR-TL
1039-00081/794534

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

Attorney General's office maintained RCW 72.01.410 granted the DCYF Secretary the exact transfer authority Defendant Hunter exercised and brought such arguments in both the state trial and appellate courts. *See* Decl Ex. C – H.

"Where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences." *Harlow*, 457 U.S. at 819. When faced with significant safety and security issues due to well documented overcrowding in Juvenile Rehabilitation facilities, the Defendants acted in good faith to exercise, what they believed to be, their statutory authority to manage the State's population of juvenile offenders. Put differently, Plaintiff has failed to allege any conduct, on the part of the Defendants, that violated "clearly established statutory or constitutional rights of which a reasonable person would have known."   *Harlow*, 457 U.S. at 818. As a result, Defendants are entitled to qualified immunity and respectfully request this Court dismiss the first four causes of action alleging violations under 42 U.S.C. § 1983.

*iv. Discovery is not required.*

Given the extensive amount of litigation in state court that has occurred, and is currently pending, discovery is not required to determine what the Defendants "knew" at the time the transfer decision was made. *Compare*, *Harlow*, 457 at 821 (concurrence)("it seems inescapable to me that some measure of discovery may sometimes be required to determine exactly what a public-official defendant did 'know' at the time of his actions.) This case implicates issues of statutory interpretation as related to the "JR-to-25" policy initiative undertaken by the legislature. The analysis and position of the State's Attorney General's Office is well documented and argued in ample briefings before both the State Superior Court and State Court of Appeals, of which, this Court may take judicial notice. Fed. R. Evid. 201(b).

"Bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." *Harlow*, 457 U.S. at

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

817-818. Given the fact this case is pled as a potential class action, the discovery burden and costs associated are anticipated to be substantial. Admittedly, while this is not a reason for the Court to deny a party's entitlement to discovery, the fact remains that, when the central issue turns on a state's interpretation of its own statutes, such expense is not in the interest of justice. For this reason, the Court should dismiss the first four causes of action as Defendants are properly entitled to qualified immunity.

### C.   *Pullman, Burford,* and *Younger*, all counsel abstention because Plaintiff's claims invoke a "difficult and unresolved" question of state law related to an "important" state interest.

*i.* Pullman *abstention*

In the alternative, this Court should abstain under *Pullman*, because the state law issues implicated in Plaintiff's allegations, primarily the DCYF Secretary's authority for facility transfer under RCW 72.01.410, would "moot or narrow the constitutional questions" alleged in Plaintiff's Complaint. *Spoklie v. Montana*, 411 F.3d 1051, 1055 (9th Cir. 2005), *see also*, *Railroad Commission of Tex. v. Pullman Co,* 312 U.S. 496, 61 S. Ct. 643 (1941). *Pullman* abstention is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it," as abstention is "the exception and not the rule." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800. 813, 79 S. Ct. 1060 (1959). *Pullman* abstention is appropriate when: (1) the federal plaintiff's complaint requires resolution of a sensitive question of state law; (2) the constitutional question could be mooted or narrowed by a definitive ruling in the state law issues; and (3) the possibly determinative issue of state law is unclear." *San Reno Hotel v. City and County of San Francisco*, 145 F.3d 1095, 1104 (9th Cir. 1998). *Pullman* abstention does not implicate subject matter jurisdiction, *Columbia Basis Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 802 (9th Cir. 2001), but is based on the voluntary recognition by federal courts of an "exceptional circumstance[] where the order to the parties to repair to the state court would clearly serve an important countervailing interest."

DEFENDANTS' RULE 12(C) MOTION TO DISMISS - 14
3:25-cv-05743-JLR-TL
1039-00081/794534

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

*Allegheny County v. Frank Mashuda Co.*, 360 U.S. 185, 188-89, 79 S. Ct. 1060 (1959).

Here, Washington State's "JR-to-25" legislation, and its accompanying impact on the State's management of its Juvenile Rehabilitation facilities, including mitigation of overpopulation security concerns, meets the first prong required for *Pullman* abstention as it involves "difficult and unsettled questions of state law" that "must be resolved before a substantial federal question can be decided." *Columbia Basin*, 268 F.3d at 801. Even as far back as 1926 the U.S. Supreme Court recognized operation of a state's criminal justice system was fundamentally a matter of state concern noting, "[t]he accused should first set up and rely upon his defense in state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection." *Fenner v. Boykin*, 271 U.S. 240, 244, 46 S. Ct. 492 (1926). Only the state court system can decide whether RCW 72.01.410 granted the DCYF Secretary the authority to transfer 18–25 year-old Juvenile Rehabilitation residents to the DOC system, in order to manage overpopulation, absent a hearing pursuant to RCW 13.40.280.[3] As described above, the ample amount of litigation over this issue in the state court system makes it clear that this is "difficult and unsettled" question of state law.

Turning to the second prong, the scope of any Fourteenth Amendment violation, in the instant Federal Complaint, is premised on whether the statutory right Plaintiff claims was violated, existed in the first place. The requirements of procedural due process "do not apply to every government action that adversely affects an individual," and are limited to deprivations of "life, liberty, or property." *Mullins v. State of Or.*, 57 F.3d 789, 795 (9th Cir. 1995).  Given that an incarcerated individual, regardless of age, has been deprived of their liberty such that they are subject to the State's prison system, there is no constitutional right to be incarcerated in a particular facility.  *Meachum,* 427 U.S. at 224.

While the procedural component of the due process clause protects "all liberty

---

[3] "A State's highest court is the final judicial arbiter of the meaning of state statutes." *Gurley v. Roden*, 421 U.S. 200, 208, 95 S. Ct. 1065 (1975).

DEFENDANTS' RULE 12(C) MOTION TO DISMISS - 15
3:25-cv-05743-JLR-TL

1039-00081/794534

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

interests that are derived from state law," *Mullins*, 57 F.3d at 795, Plaintiff is still required to plead a violation of a state law created liberty interest in order to properly plead a Fourteenth Amendment violation sufficient to survive a Motion to Dismiss under Fed. R. Civ. Pro. 12(c). As a result, if this Court were to find that Plaintiff has met the burden for their Fourteenth Amendment due process claim to go forward, this Court would, in effect, be making a ruling that RCW 71.02.410 created a statutory right for young adults to be housed in a limited set of facilities within Washington State's correctional system.

In the state court system, this determinative issue of state law remains unclear, as the parties in *Ta'Afulisia* entered into an amended settlement agreement after the Washington State Court of Appeals denied the Attorney General's Office's Motion for Discretionary Review. *See,* Decl. Ex. H, I. In addition, *Lenay, et.al, v. DCYF,* currently pending, will also consider whether the very same defendants in this case, by virtue of their leading roles in DCYF, were negligent, and therefore liable for damages, for ordering the transfer. Decl. Ex. A. Review of the currently pending *Lenay* matter in state court is a virtual carbon copy of allegations presented here and therefore implicates the very same statutory interpretation issues of state law that will operate to bound any constitutional claims in this case.

*ii.* Burford *abstention*

Abstention is also "appropriate where there have been presented difficult questions of state law bearing on problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River*, 424 U.S. at 814, *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25. The "state question itself need not be determinative of state policy. It is enough that exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River*, 424 U.S. at 814, *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S. Ct. 1098.

Put simply, the Washington State Juvenile Rehabilitation system is presently facing

DEFENDANTS' RULE 12(C) MOTION TO DISMISS - 16
3:25-cv-05743-JLR-TL
1039-00081/794534

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

significant challenges, as evidenced by the extensive amount of litigation surrounding the State's "JR-to-25" legislation. While Washington State is to be commended for its efforts to recognize some of the leading ideas in young adult brain development, the fact remains that implementation of this new policy is a substantial matter of public concern that continues to present significant funding and implementation challenges. Any ruling on the merits of the claims in this case, has the potential to "impair efforts to implement state policy" and "interrupt any such efforts by restraining the exercise of authority vested in sate officers." *Colorado River*, 424 U.S. at 816; *Pennsylvania v. Williams*, 294 U.S. 176, 55 S. Ct. 380 (1935).

    *iii.* Younger *abstention*

    To the extent that Plaintiff's claims relate to any *ongoing* state court proceedings, this case still should be dismissed under the *Younger* abstention doctrine.

    Under the *Younger* doctrine, federal courts should abstain from maintaining jurisdiction over federal actions that would function as effective injunctions in ongoing state law proceedings. *Younger v. Harris*, 401 U.S. 37, 54, 91 S. Ct. 746, 755, 27 L. Ed. 2d 669 (1971). While *Younger* initially concerned state criminal law proceedings, the doctrine has been expanded to advise abstention from matters that implicate "important state interests." *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 424, 102 S.Ct. 2515 (1982) ("The policies underlying *Younger* are fully applicable to noncriminal proceedings when important state interests are involved."). "*Younger* abstention is appropriate when: 1) there is "an ongoing state judicial proceeding"; 2) the proceeding "implicate[s] important state interests"; (3) there is "an adequate opportunity in the state proceedings to raise constitutional challenges"; and (4) the requested relief 'seek[s] to enjoin' or has the 'practical effect of enjoining' the ongoing state proceeding." *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018).

    "The importance of a state interest sufficient to warrant *Younger* abstention may be shown 'by the fact that the noncriminal proceedings [in a given case] bear a close

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

relationship to the proceedings criminal in nature.'" *Rowland v. Novus Financial Corp.*, 949 F. Supp 1447, 1456 (D. Haw. 1996) (quoting *Middlesex*, 457 U.S. at 432). In applying *Younger* abstention to a state law civil nuisance proceeding seeking the closure of an adult theater showing obscene films, the Supreme Court explained:

> *Younger*, and its civil counterpart which we apply today, do of course allow intervention in those cases where the District Court properly finds that the state proceeding is motivated by a desire to harass or is conducted in bad faith, or where the challenged statute is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whether manner and against whomever an effort might be made to apply it.'

*Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611, 95 S. Ct. 1200 (1975). Absent such an exception, the principles of "comity and federalism" urge abstention and compel a belief that "state judges will be faithful to their constitutional responsibilities." *Id.*

Here, the "JR-to-25" legislation, and resulting scope of the DCYF Secretary's statutory authority, has been, and continues to be, litigated in state court. Clearly, management of the State's Juvenile Rehabilitation system and Department of Corrections is an "important state interest" that is "quasi-criminal" in nature as it underpins the entire functioning of the State's criminal justice system. Because the constitutional issues implicated in this litigation "involve a statute which is capable of judicial narrowing [RCW 72.01.410]," the state court system would not be "fairly accorded the opportunity to resolve the federal issues arising in its courts if a federal district court were permitted to substitute itself." *See, Huffman*, 420 U.S. at 609. Further, any relief granted by the District court in this case, in the event this Court was to find a constitutional right existed for 18-25 year-olds to remain at a Juvenile Rehabilitation facility absent an administrative hearing, would have the "practical effect of enjoining" the ongoing state court proceedings, as it could compel an interpretation of RCW 72.01.410 that is not "clearly established" in state law. *See, e.g., Arevalo* at 882 F.3d at 765; *Harlow*, 457 U.S. at 818.

DEFENDANTS' RULE 12(C) MOTION TO DISMISS - 18
3:25-cv-05743-JLR-TL
1039-00081/794534

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

For these reasons, Defendants respectfully request this Court exercise abstention as counseled in *Pullman*, *Burford*, and *Younger.* Given that identical claims are presently pending in state court, Defendants request this Court dismiss the instant complaint in order to properly let the state court system fulfill its role as the final arbitrator of statutory definition.

**D.    This Court should decline to exercise supplemental jurisdiction over identical state law property claims that are currently pending in Thurston County Superior Court.**

Defendants respectfully request this Court decline to exercise supplemental jurisdiction over Plaintiff's fifth case of action as it is a state law claim for Trespass to Chattels. 28 U.S.C. § 1367(c)(3) Complaint at ¶ 34. As noted above, Plaintiff has brought an identical claim in the state court. *See,* Decl. Ex. A at ¶ 31 As a result, the typical remedy of dismissal without prejudice, with any accompanying tolling of the statute of limitations to allow for refiling in state court, is not necessary. *See* 28 U.S.C. § 1367(d).

## VI.    CONCLUSION

For the forgoing reasons, Defendants respectfully request this Court dismiss Plaintiff's Complaint with prejudice.

I certify that this memorandum contains 6,190 words, in compliance with the Local Civil Rules.

DATED:  April 16, 2026

KEATING, BUCKLIN & McCORMACK, INC., P.S.

By: */s/ Danielle M. Rogowski*
Danielle M. Rogowski, WSBA #51548
Richard B. Jolley, WSBA # 23473
Jeremy W. Culumber, WSBA # 35423
Special Assistant Attorneys General for Defendants
1201 Third Avenue, Suite 1580
Seattle, WA  98101
Phone: (206) 623-8861
Fax:    (206) 223-9423
Email: drogowski@kbmlawyers.com

DEFENDANTS' RULE 12(C) MOTION TO DISMISS - 19
3:25-cv-05743-JLR-TL
1039-00081/794534

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

## CERTIFICATE OF SERVICE

I hereby certify that on the below date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Attorneys for Plaintiffs**
Darrell L. Cochran, WSBA No. 22851
Patrick A. Brown, WSBA No. 56627
PFAU COCHRAN VERTETIS AMALA PLLC
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799
Email:  darrell@pcvalaw.com; pbrown@pcvalaw.com
khedger@pcvalaw.com; kmoore@pcvalaw.com
MHetlage@pcvalaw.com; broebuck@pcvalaw.com

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:  N/A.

DATED:  April 16, 2026

/s/ Teresa A. Caceres
Teresa A. Caceres, Legal Assistant
Email:  tcaceres@kbmlawyers.com

DEFENDANTS' RULE 12(C) MOTION TO DISMISS - 20
3:25-cv-05743-JLR-TL
1039-00081/794534

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE:  (206) 623-8861
FAX:  (206) 223-9423